WINGFIELD W. LIVINGSTON, plaintiff in error, vs. JOHN LIVINGSTON, defendant in error.

[1.] A *certiorari* may lie under the Constitution and the old law, although, not provided for, by any Act of the Legislature.

[2.] Certiorari lies for error committed in a *habeas corpus* case before the Justices of the Inferior Court.

[3.] In *habeas corpus* cases before the Justices of the Inferior Court, the Court does not expire with the delivery of the judgment, but remains in existence, and subject to certiorari.

[4.] A writ of error lies for either party, in a *habeas corpus* case growing out of an imprisonment for contempt, under the Act of 1821, for the restoration of the possession of personal property.

Certiorari, in Chattahoochee Superior Court. Decision by Judge KIDDOO, November 24th, 1857.

This case came on upon exceptions to a decision of Judge

Kiddoo, overruling a motion to dismiss a writ of *certiorari* which had been issued under the following circumstances:

John Livingston, the defendant in error, on the 1st of January, 1857, sued out a possessory warrant before Mark A. George, one of the Justices of the Inferior Court, against Wingfield W. Livingston, the plaintiff in error, for the recovery of two negro slaves; and upon the hearing of the case, it was ordered that W. W. Livingston should deliver the two negro slaves to John Livingston, or in default, should be committed to jail until he should so deliver them up. W. W. Livingston having failed to deliver up the negroes, was duly committed to jail by a mittimus under the hand and seal of Mark A. George, Esq.

On the 9th of January, 1857, Wingfield W. Livingston sued out a writ of *habeas corpus*, under the order or *fiat* of one of the Justices of the Inferior Court, and upon the writ of *habeas corpus* coming up for trial, the Inferior Court dicharged Wingfield W. Livingston from jail. John Livingston, thereupon, presented a petition to David Kiddoo, the Judge of the Superior Court, setting out the facts above stated, and praying for a writ of certiorari directed to the Justices of the Inferior Court, and the clerk of that Court, requiring them to certify and send up the proceedings had in the *habeas corpus* cause, at the next Superior Court, and that the order of the Justices of the Inferior Court discharging Wingfield W. Livingston from jail *might be annulled*. A writ of certiorari was accordingly issued on the 28th of February, 1857.

Upon the writ of certiorari coming on for trial, on the 24th day of November, 1857, before David Kiddoo, the Judge of the Superior Court, the counsel for the defendants moved to dismiss the writ upon the following grounds:

1st. Because a certiorari is a creature of our Legislature and cannot be executed beyond the permission of the same.

2d. The writ of *habeas corpus* being a protection of liberty, its judgment is conclusive.

3d. The forum rendering the verdict is one of original jurisdiction, and its decision cannot be reversed.

4th. The plaintiff's remedy was to sue out another possessory warrant.

5th. This Court cannot pass any legal judgment in this cause which can be executed.

6th. The Inferior Court only represents the Judge of the Superior Court when sitting as a *Habeas Corpus* Court.

7th. The commitment was for a contempt, and therefore, a criminal proceeding, and the State cannot bring up such a cause.

8th. That the judgment of the *habeas corpus* tribunal is an executed judgment.

The Court, however, overruled the motion to dismiss on all the grounds taken. To this decision the defendant excepted, and assigned as error all the above grounds.

W. S. JOHNSON; and McCOY & HAWKINS, for plaintiff in error.

THOMAS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the judgment overruling the motion to dismiss the *certiorari*, right?

The first ground of the motion was, "Because a *certiorari* is a creature of our Legislature, and cannot be carried beyond the provisions of the same."

It is understood, that the meaning of this, is, that none of the Acts of the Legislature, relating to *certiorari* extend to a *habeas corpus* case like the present; and that there cannot be a *certiorari* in any case unless there is some Act of the Legislature to authorize it in that case.

The first of these two propositions, may be admitted, but the second is denied. The Constitution, itself, gives the *certiorari*. It says, that the Superior Courts "shall have pow-

er to correct errors in inferior judicatories, by writ of *certiorari.*" Under this grant of power, the Superior Courts might have issued writs of *certiorari* before any of the Acts of the Legislature as to *certiorari* was passed; they might now issue writs of *certiorari*, if no such Acts had ever been passed.

In that case the law to be resorted to, for regulating the proceedings, would be the old law—mainly the old law relating to writs of error; for every writ of error at common law, included a *certiorari*. That writ was at once, a *certiorari* and a commission—at once an order to certify a case to a particular tribunal; and a commission to that tribunal, to hear and determine the matters of error, contained in the case. See *Davis vs. Rodgers, decided at Atlanta, Aug.,* 1857. 22 *G. R.*

The Court to which this writ of *certiorari* was directed, was the Inferior Court, or the Justices of the Inferior Court. Such a Court, as compared with the Superior Courts is an "inferior judicatory." 1st, Its jurisdiction is as nothing, compared with that of the Superior Courts. 2d, It is the creature of the Legislature, and the power of the Legislature to create Courts, does not extend to the creation of any Courts, except Courts of a lower dignity than that of the Superior Courts. This, I think, has been the uniform interpretation of the first sentence of the third article of the Constitution.

[1.] We think, then, that the first ground of the motion, was insufficient.

[2.] The grant of power, is, "to correct errors." "Errors" is a general term, and therefore, it must embrace errors committed in a *habeas corpus* case, as well as those committed in other cases. Besides, the judgment in a *habeas corpus* case, might be *adverse* to the plaintiff. In case it were, there might be a different opinion, as to whether, "the writ of *habeas corpus* was a protection of liberty."

We think, then, that there was nothing in the second ground.

Obviously, we may say the same, of the third and fourth grounds.

The fifth ground was, "That this Court cannot pass any judgment in the case, which can be executed."

It is said that as soon as a *habeas corpus* Court of this kind renders its judgment, it expires; and, therefore, that there is, then, no Court which the *certiorari* can be directed to, or which can execute the judgment of the Superior Court rendered on the certified case.

But why should it be admitted, that this *Habeas Corpus* Court expires with its judgment? The statute is silent, as to when it is to expire. If it expires with its judgment, of what value will the judgment be? Suppose the Sheriff disregards the judgment, what tribunal is there to make him do his duty? None. See *Taylor vs. Gay*, 20 *Ga. R.*; *Marchman vs. Todd*, 15 *Ga. R.*

It is true, that *Heard vs. Heard*, 18 *Ga. R.*, seems in conflict with these two cases; but first, that case might have been put upon another ground; there were no *merits* in it; 2dly, it did not pretend to overrule *Marchman vs. Todd*, and if it had, it would, itself, have in turn, been overruled by *Taylor vs. Gay*.

[3.] We think it not true, then, that this *habeas corpus* Court expires with its judgment. We think the Court still remains in existence to superintend the execution of that judgment, and therefore, that there is still in existence a tribunal to be reached by a *certiorari*.

Hence, the fifth ground is in our opinion insufficient.

There is nothing in the sixth ground.

[4.] Nor in the seventh. In a rule against the Sheriff, either party may except, and have a writ of error. This has, repeatedly been held by this Court. And that is as much "a criminal proceeding," as this is; so as to proceedings on forfeited bonds in criminal cases.

The truth is, that a commitment under the Act of 1821, is purely *remedial*. It is for the exclusive benefit of the *plain-*

*tiff in the proceeding.* *Cobb,* 591–2. The State has no concern with it.

The eighth and last ground, was, that "the judgment of the *habeas corpus* tribunal, was an executed judgment."

True, that judgment annulled the commitment, and thus deprived the Sheriff of authority longer to hold his prisoner. But a judgment reversing that judgment, would revive the commitment, and thus restore authority to the Sheriff, to retake, and to hold, the prisoner.

We think, then, that there is nothing in this ground.

Upon the whole therefore we affirm the judgment of the Court.

Judgment affirmed.